That's case 061420, Walter Kidd with the Universal Security. In this case, it is at once a relatively simple and complicated procedure. In this case, we really have three grounds that we are pursuing in the context of reversal of the low court's judgment, but dismissal of the action. But primarily, I think we do need to address the Federal Circuit's jurisdiction in this case. In the event that the Federal Circuit believes, this court believes that the lower court's dismissal of the action did not include dismissal of USI's counterclaims, then there is an argument that there wasn't a final judgment. However, this court's precedence in HR technologies, which we cited in that brief, tends to indicate that this court does have jurisdiction by virtue of the dismissal of USI's counterclaims. In fact, I looked on PACER and it indicates, by the way, that the case has been terminated by the District Court. That's the District Court's own entry into PACER. So I think that would substantiate your claim that they did in fact dismiss your counterclaims. And as long as we can dispose of the Federal Circuit jurisdiction issue, then I'd like to move on to the grounds for reversing that dismissal. One is that the judge dismissed in a lower court the case while a motion or before making a determination on the standard, the subject matter jurisdiction of the plaintiff. Whether or not the plaintiff, in that case, had standing had to be determined in order to determine whether or not the court had jurisdiction over the matter complained of originally by Walter Cab. And if it didn't have subject matter jurisdiction, what kind of dismissal would it have? Well, in this case, Your Honor, it would have had to have dismissed the complaint. But because several of the counterclaims advanced by Universal Security, in part, turned on the fact that the plaintiff did not own the patent. It's wrongfully asserting a patent it did not own. Then we were deprived at that point of pursuing those claims independent of the fact that they didn't know what had been established at that point. And the court could have heard our complaint or our counterclaims. But your initial point and your initial argument, as I understand it, is that the court was not permitted to voluntarily dismiss the case in the presence of a standing motion of this sort. And you say that under Fourth Circuit law, which we should look to for those sorts of things, there is a non-presidential opinion, short, but no presidential opinions. And it seems to me that short would be directly on point, but for what I think is a critical difference. And tell me if I'm wrong here. In short, the defendants opposed the voluntary dismissal. And in this case, you stipulated to it. You stipulated, the record shows, as far as I can tell, that your party stipulated to the voluntary dismissal of the plaintiff's complaint. Not of your counterclaims. I agree. You preserved your right on that all the way through. But you stipulated to the voluntary dismissal of the plaintiff's complaint. Now that is the critical difference that I see between your case and short. Because in short, they maintained all the way up through appeal that the plaintiff's complaint should not have been dismissed voluntarily, but rather the court had to resolve the standing motion. Actually, Your Honor, I don't hold us stipulated to dismissal. What we did was we agreed to dismissal with prejudice, but opposed dismissal without prejudice, for the very reasons that it would be burdened in prejudice, or U.S.I. would be burdened in prejudice, by the redoing of the case, the loss of the long history of litigation at that point. So I'm getting it wrong. You didn't stipulate to dismissal. I know, Your Honor. We did not stipulate to dismissal without prejudice. That's a certain thing. We opposed that, as a matter of fact. And I direct your attention to 841. Appendix 841. Appendix 841 comprises a page including an argument in the first line, the heading being, Katie's claim should be dismissed with prejudice. How is the lack of standing raised? Well, originally, Your Honor, we recognized that there was a question. We had filed a Rule 12 motion for lack of personal jurisdiction to dismiss with and or transfer of Maryland for lack of personal jurisdiction and or improper venue. In that original document, we made the representation to the court that it appeared from the records of the United States Patent and Trademark Office that, in fact, the plaintiff did not own the patent. At that point, when they filed their opposition to that motion, it became clear because they did not present the right. It was challenged that they did not present any kind of proof that they owned the patent outside of the declaration of an employee who was not present at the time. In our reply, we pointed out to the court in North Carolina that, in fact, it appeared now that they were not the owner and they were the improper party to bring the suit to the court. Therefore, there was no subject matter jurisdiction. That was not addressed. That point was not addressed, unfortunately, by the lower court in its ruling by Judge Bullock in his ruling on the Rule 12 motion for dismissal for lack of personal jurisdiction. Then we had, in the meantime, filed a declaratory judgment action in America recognizing that we then would have the first filed case in the event that the subject matter jurisdiction was recognized. At that point, you filed it against Walker? That's correct. Even though you were still alleging that they did not own the patent? At that point, they had obtained this October 3, 2003, self-styled confirmatory assignment. I'm curious to know the practical ramifications of what your arguments are. If I understood it correctly, you're saying that this court should reverse the North Carolina court and set it back for that court to decide whether or not at some time in the past Walter Kidd owned a patent that it said it owned but turned out maybe it didn't. While there's still litigation going on in Maryland against Walter Kidd, all from the same issues, right? No, Your Honor. The Maryland action was dismissed by Judge Quarles by virtue of the decision by Judge Bullock in which it was argued by Walter Kidd that Judge Bullock had made the decision that the court had A, subject matter jurisdiction, and B, that the personal jurisdiction over the defendant  So Judge Quarles in Maryland not giving appropriate comity to Judge Bullock's decision dismissed the Maryland action and we proceeded from that point on to fight in North Carolina. So essentially, in terms of prejudice to the defendant, it was that we were now fighting the years-long battle in North Carolina until literally the trial. And at that point, the dismissal was entered? Well, the dismissal was entered actually after the trial was originally scheduled because we were at a pre-trial hearing and it was raised in a motion of limiting. Now it's a little complicated because Judge Bullock retired in the meantime, Judge Tilly took over the case, and Judge Tilly in North Carolina had not been privy to the standing arguments. In a motion of eliminating, it all came out in the arguments of the elect trial pre-trial conference and hearing on the motions of eliminating, it came out that Judge Tilly was very concerned about the subject matter jurisdiction question and gave leave to Walter Kidd to establish that, in fact, it owned the patent. In lieu of making that show, Walter Kidd dismissed the first action and filed a second action on the same day, that was November 28, 2005. Later, the judge then ruled on the motion to dismiss in March and he took the appeal. Counsel? He ruled on a motion to dismiss under Rule 41. Yes, Rule 41A2. While we're still on the issue of the confirmatory assignment of the patent, there's one document, A106, and there it shows that MIT, which was the original SID, listed the transfer of the Walter Kidd, not by assignment, but by acquisition of assets. Is that correct? Well, that's the argument that they were making in 2003. This acquisition, which was a very substantial document, only produced in March of 2005, simply the purchase agreement only produced in USI in 2005, demonstrated that, in fact, the lawyers had made a drafting error. We'll concede that. The lawyers in that case had made a drafting error. I don't want to be scrimped. They had identified the wrong owner of the patent in this 100-plus page document and, therefore, nothing transpired thereafter. The wording contained within the rest of the document, which was an issue that was addressed at this Illuminate hearing before Judge Tilley, the language appeared to be in subjunctive and future tense. Nothing was effectuated as a result, and, therefore, it was our position that there was no writing satisfying the requirements to establish that Walter Kidd was, in fact, the owner of the patent. Well, did the court make any determinations as to whether or not that transfer was by Operation Law of Walter Kidd back in January of 1997? No, that was exactly the point that Judge Tilley had requested Walter Kidd to establish, and he gave him the lead, postponed the trial, gave him the lead, to demonstrate to him that, in fact, the 1997 purchase agreement did transfer. By Operation Law? Well, by Operation Law, by Hong Kong law, probably, but we weren't concerned about Operation Law. Otherwise, what you're talking about here is that the assignment, the confirmatory assignment of the patent would be a nontra-tump type of assignment. At best, yes, Your Honor. If it's anything at all. Yes, Your Honor. That would not establish standing on a nontra-tump basis for the patent back in the original filing. In June of 2003. June of 2003. And, in fact, that nontra-tump assignment was obtained only as a result of our August communication to Walter Kidd, indicating that it did not appear that they overtapped. But, counsel, the result of the standing motion, if we do send it back, if we agree with your assessment of the Fourth Circuit in the Short decision, and, by the way, the Fourth Circuit in Short is non-presidential and it says, has a line something like, we follow other courts along. I couldn't find any other courts that said it. Could you? No. I mean, did you have any other citations to it? I didn't see any other regional circuit citations in your brief, so I'm guessing there aren't any. It's a non-presidential decision. Well, Your Honor, there actually... Were there other regional circuits that have similarly held that, in the presence of a standing motion, you can't issue a voluntary dismissal? Your Honor, I'm not prepared to respond to that. That's okay. Well, I saw a notation to that effect in Short, but I couldn't find the cases personally, and you all didn't cite them, so I'm guessing maybe they're not there. I can assure you we looked for the Federal Circuit. Well, okay. We're not successful in that conversation. I wanted to ask you, but even if we send it back and say, no, you should have rolled on the standing first, the district court judge, of course, has the discretion to dismiss with or without prejudice as a basis, a conclusion, with regard to his standing determination, even if he finds there was no standing at the time. Yes, Your Honor. Then the only result is going to be a dismissal, just like the voluntary dismissal, and then he has a choice of dismissing with or without prejudice at that point. And with or without conditions, which is the alternative that we have. You had all that in front of him. You knew it was going to go back, and it's not going to change, right? I mean, procedurally, you might be right, and maybe we should send it back on this basis, but it's not going to probably change the outcome. But your entire issue, though, is with respect to the counterclaims. And with respect to the counterclaims, you should not have dismissed the counterclaims outright. Moreover, if you do go back, you also have a detrimental determination against Walter Kitty, which you want to maintain with respect to their expert witness. Yes, that is correct, Your Honor. But wouldn't the district court be free? I agree with HR Technologies being a presidential decision, of course, of this court, and this panel has no right to deviate from it. And it seems to suggest that the dismissal of your counterclaims was improper in this case. Now, you will agree with me, won't you, that it is a dismissal only of your counterclaims unrelated to ownership of the patent. For example, your counterclaim of non-infringement or invalidity,  when Mr. Kitt did not own the patent, you would not be able to maintain that counterclaim against him because he would not be in a position to defend the validity of the patent. His defense would be irrelevant if he was not an owner of the patent. If I may respond to two points. First of all, Walter Kitty is a very large corporation. He's not an individual. Okay, that's fine. Very large corporation owned by United Technologies. Secondly, in terms of the adverse determination of ownership, that plays into the Sherman count and the unfair competition counts that were... Yeah, I just want to make sure we understand each other. You had 11 counterclaims slash affirmative defenses. Most of them went to whether the 181 patent is unenforceable or invalid or not infringed. Those should not be remanded to the district court under these circumstances because if he had no standing or was not an owner, then those counterclaims could not be preserved and moved forward on against that individual. Is that correct? Well, that's the plan. That would be correct. Yeah, because HR Technology says you send back the ones that didn't have anything to do with that. My review of your counterclaim would suggest that is the ones related to the Sherman Act and the unfair competition act and maybe that that misuse as well. Okay, I just wanted to make sure I understood that. And this may just be more of what you said in response to Judge Moore's questions, but I'm trying to understand what the harm is to your client if things stay as they are right now? Is there a second? The kid too? Kid? I have an entry. Kid. Okay. In the second litigation that's currently pending, are all the same issues available to you as in the first one? Is there anything that would be different other than the fact that you want to hang on to an adverse evidentiary ruling? Is there anything different in the second? Yes, there would be. And that would, as a matter of fact, in response to Judge Moore raised the patent misuse issue, the patent misuse defense. An adverse determination on the subject matter at this point would tend to support, it would prove, it would be a large chunk of the evidence that we could rely on to establish the patent misuse and the unfair competition if in fact that disappears before, or it disappears because the court is sustained and it's dismissal. At this stage, we lose that opportunity. We would have to go back and basically argue about a position that had existed in the past and not present. So you'd still be able to argue those historical facts. You'd still be able to put in evidence to say they didn't have it at the time. You want the benefit of a court finding that they didn't have it because you want a jury to look at that and say, oh, the court said that and you want the added benefit that comes with that. That would be a correct argument, yes. Wouldn't you also have to, if you go back on a present basis and they could prove standing because they could prove that the contract back in 97 transferred title to them, would that really eliminate some of your arguments? It would, Your Honor. It actually would, but they were given the opportunity to do so and we submit that by dismissing the action coupled with the attention of a November 2005 further document indicating ownership, which they used in connection with the filing of the new suit, that document, and unfortunately that's not in this record now, but we would submit that it is by their own conduct an admission that they did not, in fact, have standing, particularly in June 2003. But you could still argue that in new cases? We could, Your Honor. Finally, one last question. If you went back and you right away got a ruling on standing, that would have a substantial impact  wouldn't it, because your damages would then be capped, of course, to the period of time of ownership and I could see how that might be very valuable in helping to resolve this case via settlement or some other mechanism. That could be. Yes, that is true. In theory? Yes. Okay. Thank you. We'll be still in a few minutes if you wait a little bit. Thank you. Mr. O'Neill? Good morning, Your Honor. May I please report? We'll add a few minutes to your time also if you need it. I appreciate it, Your Honor. My name is Al O'Neill. I'm originally from Minneapolis and my associate with me is Keith Sorge. Your Honor, I'd like to start out by addressing a question that Judge Moore raised first. The short case, Your Honor, in our view, does not stand for the proposition that the district court in Below had to decide standing before it decided on a Rule 41A motion. And the first point on that is that in fact, USI did not raise that issue before the district court and we would contend that therefore they weighed the argument here that the court should have determined standing before ruling on it. Your Honor, Mr. Kahn said they may not have had a formal motion but when the facts came to light they told the district court about it and made their pitch. Do you disagree with that? Well, I agree that, number one, they had no Rule 12 motion for dismissal. They never filed a Rule 12 motion for dismissal in the case. Your Honor, they had contested standing or raised the issue of standing from the beginning of the case when they filed their answer in counterclaims. They never brought a motion on that issue. They took discovery on that issue beginning in January of 2005. But isn't the reason they never filed their motion because they couldn't get from you guys until the last possible minute the actual agreement transferring ownership? No, Your Honor, that's not correct. In the absence of that agreement, I don't see how they could have necessarily proven it. They raised the issue early in the case, as I said, and filed their motion for dismissal for improper venue. They cited an alleged lack of ownership. We submitted an affidavit of the president of our company at the time that said that the ownership of the patent was transferred as of according to this 1997 purchase agreement. That declaration was a part of our submission in response to their motion. Now, early in the case, I suggested that the parties could take some discovery relating to that motion. And USI declined to do that. In other words, they didn't take any discovery. They didn't ask you for that 1997 ownership? No, Your Honor. They never asked you for that? They asked for it after the court had denied their motions for transfer of improper venue. Then the parties submitted discovery requests. Well, prior to that, they probably were trying to get the case transferred back to Maryland, weren't they? They were, Your Honor. Their motion was for lack of personal jurisdiction and improper venue. Right, Your Honor. They didn't move under Rule 12 for dismissal for lack of standing. But at that point, once they did not obtain that, then they asked for the standing issue. They started discovery. Both parties started discovery. They asked for the agreement. In January of 2005, which was 10 months before the trial date, in response to their discovery, we produced a redacted portion of the agreement which were the relevant sections of the agreement relating to transfer of intellectual property. And, by the way, those are the only portions of the agreement that either party has ever relied upon, either here or in the district court. And then by March, we produced an unredacted complete copy of the agreement. So, to get back to your question, Your Honor, the issue of standing was in the case. It's been in the case from the beginning. But in the short case, which the Fourth Circuit non-presidential decision, there was specifically a Rule 12 motion. And the court, the Fourth Circuit, said there that this was the Fourth Circuit's statement of the issue before it. May a district court dismiss an action pursuant to Rule 41B, where there is an outstanding motion to dismiss for lack of subject matter jurisdiction. So you're saying it's not the issue of standing, but rather the technicality, and I don't mean that in a bad way, but rather the technical filing of a motion to dismiss that inhibited the court from dismissing voluntarily in that case. That's what we believe distinguishes the short case from the situation here. Did they never actually make such a motion to dismiss for lack of standing? They never made that motion at any point in time in the course of the proceedings below? No, Your Honor. The motion, the issue arose on the eve of trial in connection with a motion in limine. It was a motion in limine which they brought to exclude Kitta from producing any evidence on the ownership issue other than the evidence that they had produced during discovery. That was how the issue arose. And then the arguments on that motion, that was when the district judge Tilley said, I think there's a problem here. Well, I'm curious, how could they, motion or no motion, if the standing issue is jurisdictional, once the district judge is apprised of it, how could anybody waive it? We're not suggesting that they waived the issue. They were ready to try the issue, Your Honor. Both parties were ready to go to trial on all the issues including ownership, validity, infringement, and damages. Nobody was waiving the jurisdictional issue. But we were ready to go to trial, and that's when the judge said, wait a minute, I don't know if I want to undertake the effort of going to trial if it turns out that the ultimate conclusion is that Walter Kitta, you didn't have standing when you first filed this complaint in 2003. So it was a subject matter of jurisdiction. That's right. So it was the issue that the judge did ask you to brief and to present. Yes, he asked us, he gave us an opportunity to come back in and try and convince him that that 1997 purchase agreement did in fact establish that the transfer of the patent as we contended that it did. And we still contend that it does. We looked at that issue, Your Honor. We found no additional documentary evidence that would support outside of the agreement that we had in our hands. Was your argument that by operation of law that agreement transferred title to the patent? That is our argument, and was our argument there. But you also have Hong Kong laws, I understand, that apply to that agreement. Was there any evidence submitted as to what Hong Kong laws that would be applicable? As part of what we went back and did when we talked, when the judge said, I want you to come back to us and try and convince me that you have standing here. We looked at the issue, we looked at the applicability of Hong Kong law, we looked at the fact that we have to address Hong Kong law issues, we looked at the fact that we were likely to have to bring in parole testimony from witnesses regarding the contract. And at that point, we felt that if this was such a concern that Judge Tilley did not seem likely to want to go forward with the case, that the most expeditious way for Pitta to get to the merits of this infringement claim was to move to the voluntary dismissal of the case and refile Pitta 2, having obtained in October of 2003 the assignment document which clearly sets forth, if there were an issue with respect to standing, that it clearly sets forth that Pitta has ownership of that patent and therefore, when the case was filed in November 2005, standing in Pitta 2 should be without question. However, Your Honor suggested that they wanted to go back in Pitta 2 and get a ruling on that issue, excuse me, in Pitta 1 and get a ruling on that issue by remand. They've raised the issue in Pitta 2. It's right before the court again in Pitta 2 because they, in fact, in this case, Your Honor, the issue of standing. They've raised it again before Judge Tilley in the second case that was filed, Pitta 2. And they did it by the way that they did it, in short, they brought a motion under Rule 12 for dismissal for lack of standing. So that issue, I think it's really, it does... That's in Pitta 2, the motion was filed? Yes, sir, Your Honor. Now, the original Pitta 1 that was dismissed was dismissed without prejudice and without any conditions. That's right, Your Honor. There's no indication in the judge's order as to why he did not impose any conditions. That's also correct, Your Honor. Now, with respect to the determination made for evidentiary materials, rulings were made in Pitta 1. Those did not carry over to Pitta 2. That's correct, Your Honor. According to, as I understand the judge's order, those were trial management decisions for Pitta 2 that the judge chose not to impose on their cross-motion for motion for conditions. That those are trial management issues, particularly within the discretion of the trial judge. That's not with Pitta 2, though. It's with Pitta 1. Pardon me, I'm sorry. It's only relating to Pitta 1, not Pitta 2. If I understood your question, Your Honor, you were saying that, you suggested that those rulings that had been made in Pitta 1 did not carry over into Pitta 2. And what I was, what I thought I was saying, Your Honor, is that that's correct. And the judge in Pitta 2, which is Judge Tilley, he's the one responsible for the trial management of that case, and he's the one that made those decisions that he was not going to impose those conditions on the management of the trial in Pitta 2. I mean, the issue, the primary... Excuse me for a second. In Pitta 1, if it had remained in place, Judge Tilley could have made the same decisions in that case as he could in Pitta 2. Is that right? He could have. In other words, there was no race judicata or collateral to stop with the fact that it's to eliminate what she was there. He could have made the same, you're right, Your Honor, he could have made the same decisions with respect to trial management. In fact, the big issue that, of USI's concern, apparently, on the conditions is the exclusion of the Kitta's expert witnesses for the untimeliness of the expert reports in Pitta 1. That motion or that order, in fact, we could have appealed that order to the judge. This was the magistrate's determination. He could have appealed it, but at the pretrial and prior to the pretrial, the judge had not ruled on that appeal. So, it's conceivable that in the pretrial, under the management of Kitta 1, Judge Tilley could have reversed the magistrate at that point and allowed Kitta to introduce an expert testimony. Counsel, with regard to the dismissal of the counterclaims, I understood your argument to be the dismissal of the counterclaims is harmless error. Are you admitting that it was inappropriate for the judge to dismiss the counterclaims in Kitta 1 as he did, at least the ones that I articulated very specifically that have nothing to do with non-infringement and validity of enforceability, but rather instead focus on the antitrust and unfair competition? Your Honor, if the judge's order is interpreted to dismiss the antitrust counterclaims, I would agree that under HR technologies that was an error, a legal error. But as I read HR technologies, it did not appear to me that the parties in that case addressed the issue of whether or not that error was harmless or not. And I contend that it was, if in fact they were dismissed, it was a harmless error because those counterclaims, whether they are live in Kitta 1 or whether they are re-inserted in Kitta 2 against Walter Kitta, it makes no legal, in my opinion, it makes no legal difference. In fact, wouldn't the district court have discretion to just consolidate it all? In fact, I think that might be what happened in HR technologies when it went back. Your Honor, that's exactly what happened in HR technologies ultimately. So, we asked, in our opposition brief, we challenged USAID to say what's the harm and what's the legal prejudice that you experienced because of the dismissal of counterclaims. And in footnote 4 of their reply, the thing they said to us was, well, we can't tell you that's word product. Well, if they can't tell us what the harm is, it seems there's no harm. And so, the dismissal would be harmless and therefore there's no reason to remand those counterclaims to the district court. Could it be those expert reports might be a reason to do it? You all don't get to take the experts to trial, but they do with regard to the counterclaims. And it's possible that if the counterclaims do go back in K-1, that the judge will continue to impose that same restriction. Those counterclaims that you're talking about, the ones that were dismissed or improperly dismissed, the ones on antitrust because of lack of ownership, unfair competition under North Carolina state law, they had nothing to do with our experts. There was no expert test. The experts that were being offered at the time were not testifying on any of those issues. In fact, the counterclaims that we're talking about had been staged. So the expert reports were limited to the really what we would call the hardcore patent issues. The hardcore patent issues. Validity, infringement, damage. Did the judge assess costs and legal fees against North Carolina? No, Your Honor. My understanding of the order is that the judge did not assess any costs or fees because they had asked for those in or at least they asked for fees. I don't specifically recall the subject of costs, but they did ask for their fees in connection with KIL-1 and in denying their motion, the judge denied their request for fees. And as we have argued and set forth in our documents, Your Honor, the request for fees, those fees and expenses that were incurred in KIL-1 are directly transferable, if you will, or applicable to the case in KIL-2. They don't have to go back and take the discovery they took directly out of KIL-2. So there would not be legal prejudice by the fact that they have to go into KIL-2. Wouldn't what you just said support the idea that there is potential legal harm not sending back the counterclaims because they were ready to go to trial and you were ready to go to trial. So why couldn't they have an expeditious trial simply on the issue of their counterclaims which pertain only to the issue of ownership. And that trial can go forward right away whereas if we don't send them back, the legal harm might be that these have to be locked in with everything else and you're at a new case file and that's going to take a lot of time before you get to trial. There's a very simple answer to that, Your Honor. Those counterclaims were stayed pending the outcome of Kitta's claim of infringement. Their counterclaims of invalidity and our claim of damages, counterclaims had been stayed. So in fact, in discovery on those counterclaims, antitrust issues, the world of discovery that you have to take in an antitrust case, all of that had been stayed. So they were not ready to go to trial. They're waiting for that to happen. The         trial. They were not ready to go to trial. The argument that they had to go to trial was that they were not ready to go to trial. They were not ready to go to trial. It was clear that there was no stand for settlement. But that was the problem that they had. And        they had. I think that was the problem that they had. And that was the problem that they had. If you had no damages in 2003 standing at that point, they could also still have their valid antitrust counter claim. They could still serve their antitrust counter claim. I might add that the October 2003 assignment did not by its terms specifically assign a claim for past damages. So we, the owner of the patent in November 2005 submitted or obtained from them an assignment of claims for past damages  the past. And the   patent  November  submitted a claim for past damages in the past. And the owner of the patent in November 2005 submitted a claim for